UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHANTELLE OKARTER,

                              Plaintiff,

        -against-

CITY OF MOUNT VERNON, and DEBORAH
REYNOLDS, *as Comptroller of the City of Mount
Vernon*,

                              Defendants.

---

CITY OF MOUNT VERNON,

                              Cross-Claimant,

        -against-

DEBORAH REYNOLDS, *as Comptroller of the
City of Mount Vernon and in her individual
capacity*,

                              Cross-Defendant.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____          │
│ DATE FILED: __07/12/2022__           │
└─────────────────────────────────────┘
```

No. 19 Civ. 1098 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Chantelle Okarter, the former appointed Commissioner of the Planning &

Community Development Department of the City of Mount Vernon, commenced the instant action

against Defendants the City of Mount Vernon and Deborah Reynolds, in her official capacity as

Comptroller of the City of Mount Vernon, seeking to recover unpaid salary, wages and overtime

compensation by asserting claims under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§

207, *et seq.,* and for common law breach of contract. (Compl., ECF No. 1.) The City filed an

answer admitting to most, if not all, of Plaintiff's allegations, and also asserting a crossclaim for

indemnification against Reynolds in her individual and official capacities. (City's Answer, ECF

No. 12.) Presently pending before the Court is Reynolds's motion to dismiss Plaintiff's claims and

the City's crossclaim against her under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 24 and 27.)[1] For the following reasons, the Court GRANTS Reynolds's motion to dismiss.

## BACKGROUND

### I. Factual Background

The following facts are derived from the Complaint and the documents referenced therein and are taken as true and constructed in the light most favorable to Plaintiff and the City for the purposes of this motion.[2]

*A.    Plaintiff's Appointment as Commissioner of the Planning & Community Development Department*

In a letter dated October 6, 2017, the City appointed Plaintiff as Deputy Commissioner of the Planning & Community Department, a full-time position for which she was compensated at the annual rate of $93,500 and to receive health benefits starting on October 18, 2017. (Compl. ¶ 14.) On December 15, 2017, the City appointed Plaintiff to the position of Commissioner of the Planning & Community Department, increasing her salary to $108,171, of which 34% percent was to be funded by the City, and 66% by the City's Urban Renewal Agency ("URA"). (*Id.* ¶ 15.)

---

[1] Defendant Reynolds filed a duplicate notice of motion.

[2] "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72. Additionally, a district court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (citations omitted).

B.     *The March 28th Ordinance*

On March 28, 2018, the City Council adopted an ordinance authorizing the Comptroller—

Reynolds—to transfer $72,442.00 from the General Fund to Budget Code A8020.101 (Salaries &

Wages) in the Department of Planning & Community Development 2018 Budget [hereinafter, the

March 28th Ordinance]. (*Id.* ¶ 16.) On April 3, 2018, the Board of Estimate and Contract adopted

the March 28th Ordinance. (*Id.* ¶ 17, 20.) Under the ordinance, Plaintiff's position of

Commissioner of the Planning & Community Department was transferred to the City's payroll and

to be funded 100% by the City starting on April 3, 2018. (*Id.* ¶ 18.) To date, Reynolds has yet to

effectuate the mandate of the ordinance, despite her receiving both the opinion of the City's

Corporation Counsel and that of outside counsel that she must do so. (*Id.* ¶¶ 21–22.)

On May 14, 2018, Plaintiff's position of Commissioner of the Planning & Community

Department was solely funded by the City and no longer received funding from the URA. (*Id.* ¶¶

23–24.) Since then, the City has failed, and continues to fail, to pay Plaintiff the full amount of her

Commissioner's salary for each week as a result of Reynolds' failure to effectuate the March 28th

Ordinance. (*Id.* ¶ 25.)

C.     *The State Court Article 78 Proceeding*

On May 15, 2018, Plaintiff and the City commenced a lawsuit in Westchester County

Supreme Court, entitled *City of Mount Vernon and Okarter v. Reynolds*, Index No. 57813/18,

seeking among other things, injunctive relief against Reynolds and the granting of back pay and

benefits and Plaintiff [hereinafter, the Article 78 Proceeding]. (*Id.* ¶ 26.)

D.     *Plaintiff Resumes Work as Deputy Commissioner of Public Safety, But Performs
       Duties as Commissioner of the Planning & Community Development*

Plaintiff received a portion of her Commissioner's salary through an emergency temporary

appointment as Deputy Commissioner of the Planning & Community Department for the period

3

of May 13 to August 3, 2018, with a salary of $101,751, with the approval of the Municipal Civil Service Commission ("MCSC"), during which Plaintiff continued to perform her duties and responsibilities as Commissioner of the Planning & Community Department. (*Id.* ¶ 27.)

On July 18, 2018, the City Payroll Administrator advised Plaintiff that the City would recoup from Plaintiff, with or without her authorization, a dollar amount equivalent to a total of 119 hours over three pay periods for work performed by Plaintiff during the period from May 14 to June 5, 2018, which work solely consisted of her performing duties and responsibilities as Commissioner of the Planning & Community Department. (*Id.* ¶ 28.) This recoupment resulted from Reynolds claiming that Plaintiff had been performing services as Deputy Commissioner of the Planning & Community Department (and not those services of Commissioner of the same) during a period that overlapped with the services of the incumbent in that position, which ultimately Reynolds claimed was in violation of the City Charter's prohibition on employing two people in the same position at the same time. (*Id.* ¶ 29.)

On July 30, 2018, Reynolds rejected a Request of Personnel Change ("RPC") which would have extended Plaintiff's receipt of compensation as Deputy Commissioner of the Planning & Community Department beyond August 3, 2018. (*Id.* ¶ 30.)

On August 4, 2018, as a means of continuing to at least partially fund Plaintiff's position of Commissioner of the Planning & Community Department, another RPC was submitted and subsequently approved by the MCSC to provisionally appoint Plaintiff as the Research & Grant Administrator in the Planning Department for her to receive a reduced salary at the annual rate of $90,870. (*Id.* ¶ 31.)

E.    *The August 14th Ordinance*

On August 13, 2018, in another effort to get Reynolds to pay Plaintiff her full Commissioner salary, the City Council adopted new legislation transferring funds from the

Council's salary budget (Budget Code A1010.101) to fund Plaintiff's Commissioner position and to retroactively pay for any salary reductions from May 14, 2018 and thereafter. (*Id.* ¶ 32.) The next day, the ordinance was adopted by the Board of Estimate and Contract [hereinafter, the August 14th Ordinance]. (*Id.* ¶ 33.)

On August 20, 2018, Reynolds again refused to comply with the mandate of the August 14th ordinance to fully fund Plaintiff's position of Commissioner of the Planning & Community Department, and to provide her with back pay retroactive to May 14, 2018, at the City approved salary level of $108,171 per year. (*Id.* ¶ 34). On August 31, 2018, Plaintiff received a paycheck from the City that did not provide her with her Commissioner's level salary, but rather was issued at the lower salary level for the Research & Grant Administrator position. (*Id.* ¶ 35).

F.    *The Westchester County Supreme Court Denies Injunctive Relief to Plaintiff and the City*

On September 20, 2018, the Westchester County Supreme Court denied Plaintiff and the City's requested preliminary injunction relief against Reynolds directing her to transfer the funds authorized by the March 28th Ordinance to fully fund the Plaintiff's salary as Commissioner of the Planning Department. (*Id.* ¶ 38). On January 3, 2019, the City and Plaintiff discontinued the Article 78 Proceeding without prejudice to allow Plaintiff to pursue her FLSA and related breach of contract common law claims in federal court. (*Id.* ¶ 39).

## II. Procedural Background

On February 5, 2019, Plaintiff commenced the instant action against the City and Reynolds in her official capacity. (Compl., ECF No. 1.) On March 3, 2019, the City filed an answer admitting to most, if not all, of Plaintiff's allegations, and also asserting a crossclaim for indemnification against Reynolds, both in her individual and official capacities. (ECF No. 12.) On July 19, 2021, the Court granted Defendant Reynolds's request for leave to file a motion to dismiss Plaintiff's

claims and the City's crossclaim, and set a briefing schedule. (ECF No. 19.)  However, after Reynolds served her moving papers, Plaintiff filed a declaration in response to Reynolds's motion on October 4, 2021, in which she consents to dismiss her claims against Reynolds because she is "no longer a necessary party in this action." (ECF No. 23 ¶ 4.)

On October 25, 2021, Reynolds filed her briefing papers on the instant motion, including her notice of motion (ECF Nos. 24 & 27), memorandum in support ("Motion," ECF No. 26), and a declaration with accompanying exhibits (Reynolds Decl., ECF No. 28). To date, the City never filed any briefing papers.

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already*, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* at 143. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

## II. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted). Where a motion is unopposed, such as here, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

## DISCUSSION

In her Complaint, Plaintiff asserts two causes of action against the City and Reynolds in her official capacity: an FLSA claim and a breach of contract claim. (*See* Compl. at 9–12.) In its Answer, the City admitted to both of Plaintiff's causes of action, but also asserted a crossclaim for indemnification against Reynolds, both in her official and individual capacities. (City's Answer at 3–5.) Specifically, the City alleges that Reynolds, individually and as its Comptroller, acted unlawfully outside of her authority as an independently elected official after she failed to comply with the executive directives of the Mayor and legislation passed by the City Council. (*Id.*)

As a threshold matter, because (1) Plaintiff consented to Reynolds's motion to dismiss the claims against her in Plaintiff's Complaint; and (2) Plaintiff's two claims against Reynolds in her

official capacity as Comptroller of the City are redundant because Plaintiff asserts those same claims against the City, *see Phillips v. Cnty of Orange*, 94 F. Supp. 2d 345, 385 n.35 (S.D.N.Y. 2012) (collecting cases), the Court dismisses all of Plaintiff's claims against Reynolds. On a similar basis, the Court also dismisses the City's indemnification claim against Reynolds in her official capacity, because otherwise, the City would be effectively suing itself for indemnification. *See id.*

Therefore, the Court only addresses the City's indemnification crossclaim against Reynolds in her individual capacity based on Plaintiff's two claims for FLSA violations and breach of contract against it.

## I.      No Indemnification under the FLSA

The City first asserts a crossclaim for indemnification against Reynolds based on Plaintiff's FLSA claim against it. (City's Answer at 3–5.) However, such claim is meritless because the Second Circuit has previously held that there is no right to indemnification or contribution under the FLSA. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) ("There is no right of contribution or indemnification for employers found liable under the FLSA."); *see also Scalia v. Employer Solutions Staffing Group, LLC*, 951 F.3d 1097, 1104 (9th Cir. 2020) ("[W]e see no indication that Congress intended to create a right to contribution or indemnification for employers under the FLSA."); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) ("a third party complaint by an employer seeking indemnity from an employee is preempted" by the FLSA); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (court should not "engraft an indemnity action upon this otherwise comprehensive federal statute," *i.e.*, the FLSA); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) (same).

Accordingly, the Court dismisses the City's indemnification crossclaim against Reynolds in her individual capacity based on Plaintiff's FLSA claim against the City.

8

**II.      No Indemnification Claim Based on Plaintiff's Breach of Contract Claim**

Lastly, the City asserts a crossclaim for indemnification against Reynolds based on Plaintiff's breach of contract claim against it. (City's Answer at 3–5.) Reynolds argues that because Plaintiff's relevant claim against the City is premised on allegations that are "inextricably intertwined" to the March 28th Ordinance that the Westchester County Supreme Court found defective, then the Court lacks subject matter jurisdiction over such claim under the *Rooker-Feldman* doctrine. (Mot. at 16.) After due consideration, the Court agrees.

The *Rooker–Feldman* doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. *See Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998). Where claims raised in a federal action are "inextricably intertwined" with a state court's determination, dismissal of the federal claims for lack of jurisdiction pursuant to *Rooker–Feldman* is proper. *Id.* at 694.

Here, the City's indemnification crossclaim against Reynolds is premised on Plaintiff and the City's allegations surrounding Reynolds's refusal to effectuate the March 28th and August 14th Ordinances so that Plaintiff could receive a salary commensurate with her appointment as Commissioner of Planning & Community Development. (*Compare* Compl. ¶ 52 ("Pursuant to the provisions of the Appointment Letter and the March 28th and August 13th Ordinances, Plaintiff was to be compensated by the City at the approved annual rate of $108,171."); *with* City's Answer ¶¶ 23–29 (alleging that Reynolds violated the City Charter by failing to comply with the executive directives of the Mayor, the lawful legislation passed by the City Council, and the lawful resolutions passed by the Board of Estimate and Contract of the City). In other words, to determine whether Reynolds acted outside her authority as an independently appointed public official by refusing to effectuate the ordinances, the Court must first necessarily determine the validity of the March 28th and August 14th Ordinances.

As such, the Court concludes that the *Rooker-Feldman* doctrine applies here because these allegations are "inextricably intertwined" with the Westchester County Supreme Court's September 20, 2018 decision and order in the Article 78 Proceeding denying injunctive relief against Reynolds to effectuate the March 28th Ordinance. (*See* Am. Compl. ¶ 38). In its decision and order, the Westchester County Supreme Court found that the balance of the equities did not favor Plaintiff and the City because the ordinance was defective as it failed to indicate from where the funds to pay Plaintiff's salary as Commissioner of the Planning & Community Department were supposed to originate. (*See* Reynolds Ex., Ex. A at 4, ECF No. 28-1.) Specifically, the court found that "[a]ny defects in the language or instructions in the legislation itself are defects that were inherent from the inception and which originated from the referral letter" that Plaintiff herself submitted because "the legislation has to be analogous with the referral letter . . . ." (*Id.*)

Thus, when considering that Plaintiff discontinued the Article 78 proceeding allegedly to pursue her claims against Reynolds in federal court, and that the City has yet to correct any of the defects the Westchester County Supreme Court found in its decision and order, then the City, through its indemnification crossclaim, is effectively seeking to relitigate the validity of the March 28th Ordinance in federal court. Hence, were the Court to entertain the City's indemnification crossclaim against Reynolds in her individual capacity based on Plaintiff's breach of contract claim, a determination in such crossclaim could result in an effective reversal or modification of the Westchester County Supreme Court.

And to be sure, the Westchester County Supreme Court did not rule on the validity of the August 14th Ordinance. However, even if the Court were to entertain the City's indemnification crossclaim against Reynolds based on Plaintiff's breach of contract claim insofar as it relies on the August 14th Ordinance, the City would still fail to sufficiently state its indemnification crossclaim.

"[A]lthough framed as [a claim] for breach of contract, [Plaintiff's claim] is actually a challenge to the [City's] administrative determination that . . . [P]laintiff was not entitled to compensation" under the August 14th Ordinance. *Purcell v. City of New York*, 973 N.Y.S.2d 167, 168 (1st Dep't 2013). "The appropriate vehicle for such a challenge is an Article 78 proceeding[.]" *Id.*; *accord Toolasprashad v. City of New York*, 93 N.Y.S.3d 291, 292 (1st Dep't 2019).[3]

Indeed, as Reynolds correctly points out, Plaintiff's appointment letter papers to be nothing more but a "certificate of appointment" under the City Charter § 18 and not a binding contract. (*See* Mot. at 15 ("Every appointment to a City office must be made by a certificate in writing, signed by the appointing officer; or made by a board, or the City Council, by the presiding officer thereof, and must be filed in the office of the City Clerk before the same becomes effective." (quoting City Charter § 18).) Neither does the City provide any argument whatsoever as to why Plaintiff's appointment letter, the ordinances, or the RPCs constitute a valid and binding contract. If anything, it is well settled that "[p]ublic offices are created for the benefit of the public and not for the benefit of the individual office holder. The office holder, whether elected or appointed, acquires no contractual, vested, or property right in the office." *Tyk v. Brooklyn Community Bd. 12*, 88 N.Y.S.3d 40 (2d Dep't 2018). Accordingly, the Court dismisses the City's indemnification crossclaim against Reynolds in her individual capacity.

---

[3] In fact, this same basis supports the Court's conclusion above that the City, through its indemnification crossclaim based on Plaintiff's breach of contract claim, is effectively seeking to relitigate the Westchester County Supreme Court's determination on the validity of the March 14th Ordinance.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Reynolds's motion to dismiss (ECF Nos. 24 and 27), and DISMISSES without prejudice (i) Plaintiffs' claims against Reynolds in her official capacity, and (i) the City's crossclaim against Reynolds in her official and individual capacities. The Court further DIRECTS Plaintiff and the City to file a written status report on or before August 2, 2022, appraising the Court on the parties' intentions moving forward given that the City has admitted to most, if not all, of Plaintiff's allegations related to her claims asserted against the City. The Clerk of the Court is directed to terminate the motions at ECF Nos. 24 and 27.

Dated: July 12, 2022        SO ORDERED:
       White Plains, NY

_____
NELSON S. ROMÁN
United States District Judge